# SAMUEL & STEIN

ATTORNEYS AT LAW

38 WEST 32ND STREET, SUITE 1110, NEW YORK, NY 10001
PHONE: (212) 563-9884 | FAX: (212) 563-9870 | WEBSITE: www.samuelandstein.com

**MICHAEL SAMUEL**　　　　　　　March 25, 2019　　　　　　　ADMITTED IN
michael@samuelandstein.com　　　　　　　　　　　　　　　　　　　NY,

**VIA ECF**

Honorable Katherine Polk Failla, U.S.D.J
United States District Court
Southern District of New York
20 Foley Square, Courtroom 618
New York, NY 10007

　　　　　　　Re: <u>Mesa Reyes et al v. 20 West Properties, LLC., et al</u>
　　　　　　　　　<u>Case No. 1:17-cv-06252-KPF</u>

Dear Judge Failla:

　　We represent plaintiffs in the above-captioned matter and submit this letter to the Court with the consent of Matthew Persanis, Esq., counsel for defendants, for the Court's assessment of and approval of the settlement agreement reached by the parties. The Settlement Agreement, executed by the parties, is being submitted contemporaneously with this letter (attached as Exhibit A), and the parties submit that the Court should approve the settlement agreement and dismiss the case with prejudice because the settlement is a fair resolution of this matter, negotiated in an arm's length negotiation between experienced counsel.

　　　　　　　　　　　　　　　　Background

　　Plaintiffs filed their complaint in this matter on August 17, 2017 and the first amended complaint was filed on July 22, 2018. The complaint asserts causes of action pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") for minimum wage violations and unpaid overtime pay, as well as claims solely under the New York Labor Law for failure to provide wage notices, and failure to provide wage statements.

　　Defendants operate a property management company located at 3605 Sedgwick Ave., Bronx, NY 10463. Plaintiffs were employed by defendants primarily as repair worker, construction workers, superintendent and handy man. Plaintiffs were responsible for various duties including maintaining the boiler; general maintenance; maintaining the interiors of the buildings, including cleaning, using ceramics, painting, plastering, and tiling floors.

　　Plaintiff, Danilo Mesa Reyes, was employed from approximately August 2015 through March 24, 2017. Ms. Mesa alleged that he worked 5 days a week, from approximately August 2015 through September 2016 and 6 days a week from approximately September 2016 until

the end of his employment. Mr. Mesa worked shifts from 8:00 a.m. until 6:00 p.m. per day. Therefore, Mr. Mesa worked approximately 50 hours per week when he worked 5 days a week, and approximately 60 hours per week when he worked 6 days a week. Mr. Mesa was paid at the following rates:

(a) $400 per week from August 2015 through September 2016

(b) $520 per week from September 2016 until the end of his employment

Plaintiff, Yordy Silverio, was employed by Defendants from approximately July 2014 through June 2017, with a gap of three weeks at one point. Mr. Silverio worked 6 days per week in 2014 and 2015, with Sundays off. He worked shifts from 8:00 a.m. until 5:00 p.m. each day. Therefore, Mr. Silverio, roughly worked 54 hours per week when he worked 6 days per week. From approximately December 2016 until the end of his employment, Mr. Silverio worked 5 days per week, Mondays through Fridays. From approximately December 2016 until the end of his employment, Mr. Silverio worked from 9:00 a.m. until 5:00 p.m. for a total of 40 hours per week. Mr. Silverio was paid at the following rates:

(a) $550 per week from July 2014 to November 2016

(b) $200 per week from December 2016 until the end of his employment

Plaintiff Andrew Rivera Soto, was employed by Defendants from approximately July 2014 to April 2016. Mr. Rivera lived in the building owned by Defendants and was employed as superintendent and handy man. He worked no official days or shifts, but instead had to be available whenever maintenance was needed. Mr. Rivera worked roughly 50 hours per week and was paid $400 per week. He was never given a paycheck and was informed by Defendants that he was working for his rent. Although, Mr. Rivera lived in an apartment owned by Defendants, he did not agree to this arrangement, and his understanding was that he would be paid a regular paycheck. Furthermore, Defendants did not supply Mr. Rivera's apartment with water or with heat during the winter.

This resulted in a rate of pay below the minimum wage, and Plaintiffs' pay did not contain an overtime premium component or a "spread of hours" bonus for working shifts extending more than ten hours from start to finish. Defendants paid them partly by cash and partly by check, and failed to provide them with weekly records of their regular and overtime compensation and regular overtime hours worked. Moreover, they were never given wage notices that explained the manner in which his pay was calculated.

Based on these facts, Mr. Danilo Mesa Reyes calculated that his maximum possible recovery was about $11,447.86 on his minimum wage claim, about $8,361.79 in overtime damages, plus $19,809.64 in NYLL liquidated damages; plus $10,000 on his Wage Theft Prevention Act claims. In addition, prejudgment interest on his New York Labor Law claims would be roughly $4,232.48. These figures add up to approximately $53,851.77.

Mr. Silvero calculated that his maximum possible recovery was about $5,428.57 on his minimum wage claim, about $8,993.52 in overtime damages, plus $14,422.09 in NYLL liquidated damages; plus $10,000 on his Wage Theft Prevention Act claims. In addition, prejudgment interest on his New York Labor Law claims would be roughly $3,611.25. These figures add up to approximately $42,455.43.

Mr. Rivera calculated that his maximum possible recovery was about $34,644.64 on his minimum wage claim, about $3,464.46 in overtime damages, plus $38,109.11 in FLSA liquidated damages. These figures add up to approximately $76,218.21.

For all claims, grand total comes up to approximately $172,525.41.

## Settlement Agreement

As the Court can see from the Settlement Agreement submitted herewith, the parties agreed to settle Plaintiffs claims against defendants for a total of $75,000.00. While the final settlement amount is somewhat less than his maximum possible recovery, we believe this to be a fair resolution to this matter, due to certain *bona fide* disputes about the value of his claims and the risks attendant with continuing the litigation.

Defendants did not maintain actual time records for their employees. Therefore, Plaintiff's calculations are based entirely on their own recollections about their work history. To be sure, under Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680 (1946), in the absence of time records from the defendants, a wage-and-hour plaintiff's testimony can be sufficient. Nevertheless, defendants did produce some sign in sheets and disputed the number of hours plaintiff worked, both within a work day and the number of days they worked each week, and it would have been up to a finder of fact to decide how much of plaintiffs' testimony to credit. To the extent defendants were believed, it could have significantly limited plaintiffs' overtime and spread of hours claims. In addition, defendants produced tax returns for each of the relevant years showing that the gross revenue was below the $500,000.00 threshold for FLSA actions. Mr. Persanis was going to make a motion for summary judgment that plaintiffs could not prove an essential element for FLSA cases and the Court could have declined to exercise supplemental jurisdiction over the state court claims

## FLSA Settlement Approval

Judicial approval of a wage and hour settlement brought under the FLSA depends on whether it is fair and reasonable. Courts look to the following factors: "(1) the plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) In addition, given the purposes of the FLSA, factors that weigh against approving a settlement also include the following: (1) "the presence of other employees situated similarly to the claimant"; (2) "a likelihood that the claimant's

circumstance will recur"; (3) "a history of FLSA non-compliance by the same employer or others in the same industry or geographic region"; and (4) the desirability of "a mature record" and "a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace." *Id*. at 336. (Citations omitted.) Ultimately, the settlement must reflect a fair and reasonable compromise of disputed issues with the principal question being "whether the agreement reflects a reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366, (S.D.N.Y. 2013)) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, *16 (S.D.N.Y. Sept. 23, 2014) (citations omitted)

Applying these factors, Plaintiffs suggest that they weigh in favor of settlement approval. First, even after attorneys' fees, plaintiffs will be receiving about 43 percent of their maximum possible FLSA damages – both actual <u>and</u> liquidated. They will also be compensated for defendants' violations of minimum wage and overtime law outside the federal statutes of limitations, for violations of the spread of hours regulations and the Wage Theft Prevention Act. They will receive these funds without running any risk or having to prove their claims. This is a substantial recovery, and courts routinely approve settlements that represent a much smaller percentage of potential recovery. *See, e.g., Beckert v. Ronirubinov*, 2015 U.S. Dist. LEXIS 167052, at *4 (S.D.N.Y. Dec. 14, 2015) (holding a settlement of approximately 25% of the amount initially sought was a "substantial proportion of the maximum possible recovery" and fair, especially in light of the risks associated with litigation). And although this settlement agreement calls for installment payments, Plainitffs are protected by a confession of judgment for 150% of the settlement amount.

The settlement will also enable the parties to avoid the delay, burdens and expenses of trial, as well as the litigation risks that always accompany same. Courts consider settlements fair and reasonable when, as is the case here, they take into account the potential risks of litigation. See e.g., *Martinez v. Hilton Hotels Corp.*, 2013 U.S. Dist. LEXIS 117738, *9 (S.D.N.Y. Aug. 20, 2013) (Court found settlement reasonable because, inter alia, it was a "compromise over contested issues" "in light of the unpredictability of the outcome at trial"); *Garcia v. BAE Cleaners Inc.*, 2012 U.S. Dist. LEXIS 51867, at *2 (S.D.N.Y. April 12, 2012) (Court held the settlement fair and reasonable even though the settlement amount was less than the potential liquidated damages awardable under the FLSA because it "reflect[ed] a reasonable compromise over" issues that had been "contested in the litigation"). Accordingly, this factor supports approving the Settlement Agreement as fair and reasonable.

Arm's length bargaining between represented parties weighs in favor of finding a settlement reasonable. *Lliguichuzhca*, 948 F. Supp. 2d at 366; *Zeltser*, 2014 U.S. Dist. LEXIS 135635, *17 (finding an FLSA settlement reasonable where, as here, it was the result of arm's-length negotiations and "Plaintiffs and Defendants were represented by counsel experienced in wage and hour law.") In this case, counsel for plaintiff are experienced wage-and-hour litigators, and the case was settled during discovery and after a full and complete

opportunity of a review of all of the Defendants' records, allowing the parties to assess the strengths and weaknesses of their positions. Plaintiffs' thoroughly considered the risks and benefits of continuing the litigation. The Settlement Agreement reflects the conclusion on the part of experienced counsel for all parties that the terms were a fair and reasonable assessment of their respective risks.

Finally, other factors present do not weigh against a settlement. All Plaintiffs no longer works for defendants, so there is no risk they will be subject to the same treatment in the future. Moreover, no one opted in to this collective action; thus the settlement of this action will have no impact on any other employees or their rights. Additionally, this case presents no novel questions of law that would benefit from extensive litigation.

Pursuant to counsel's retainer agreement with plaintiffs, we will be reimbursed for out-of-pocket expenses of $560 (filing fee and service of process)[1] and will retain 1/3 of the net settlement as attorneys' fees. Based on our experience in handling FLSA matters, this is a standard arrangement in this District, and is routinely approved by courts in this Circuit. See, e.g., *Garcia v. Pancho Villa's of Huntington Village, Inc.*, 2012 U.S. Dist. LEXIS 144446, *21 (E.D.N.Y. Oct. 4, 2012) (noting that counsel's request for one-third of FLSA clients' recovery is "reasonable and consistent with the norms of class litigation in this circuit"); *Cortes v. New Creators, Inc.*, 2016 WL 3455383, at *5 (S.D.N.Y. June 20, 2016) (holding fee award of one-third of settlement "consistent with `contingency fees that are commonly accepted in the Second Circuit in FLSA cases.'" (quoting *Najera v. Royal Bedding Co.*, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015)); *Mireku v. Red Vision Sys., Inc.*, 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (finding that where, as here, the fee award is consensual since "Plaintiff has explicitly approved the agreement, including the amount of fees to her counsel" the award should be approved); *see also Porzig v. Dresdner, Kleinwort, Benson, North America LLC*, 497 F.3d 133, 141 n.4 (2d Cir. 2007) ("any attorney's fee ultimately belongs to [plaintiff], the client, and not the attorney," and courts "assume[s] the attorney and client will settle the distribution of the attorney's fees . . . according to their own contract terms, which are beyond the province of this Court") (citations omitted). Moreover, it represents an attorneys' fee amount of approximately 1.66 times our lodestar, a multiplier much smaller than is commonly approved in FLSA contingency litigation. Pucciarelli v. Lakeview Cars, Inc., 2017 WL 2778029 at *2 (E.D.N.Y., June 23, 2017) ("Courts have routinely found that doubling the lodestar yields a reasonable fee in the context of FLSA settlements.")(citing cases); Fujiwara v. Sushi Yasuda Ltd., 58 F. Supp. 3d 424, 439 (S.D.N.Y. 2014)("multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases.")

While we are applying for a percentage of the recovery as is common in FLSA cases, we believe that our lodestar cross-check figure is reasonable; it was calculated as per the attached billing records - Exhibit "B" which are maintained contemporaneously in our billing software.

---

[1] The Court can take judicial notice of the filing fee; receipts for other expenses (except subway fare) are attached as Exhibit C.

Hon. Katherine Polk Failla
March 25, 2019
Page 6 of 6

I am a founding partner of Samuel & Stein. I have practiced law since 1993, have been admitted in the state of New York since 1993, and I focus my practice almost exclusively on wage-and-hour cases, serving as counsel of record in more than 250 such cases. I am admitted to practice in the Southern and Eastern Districts of New York. My time appears in the chart under "MS." My regular hourly rate for matters such as these is $425. I believe this hourly rate to be commensurate with other practitioners with a similar amount of experience in my locality who represent clients in matters such as this. I have handled a number of FLSA cases on behalf of defendants and my hourly rate for those case is between $425.00 and $450.00. My former associate, Ruchama L. Cohen, has practiced law since 2015, almost exclusively in the wage-and-hour area. She became licensed to work in the State of New York in January 2016. She is also admitted to practice in the State of New Jersey, the District of New Jersey, and the Southern and Eastern Districts of New York. Her regular hourly rate is $225. Her time appears on the chart as "RC."

These rates are well within the norm of billing rates for cases of this nature in this district. See *Mendez v. Casa Blanca Flowers, Ltd.*, 2014 WL 4258943, at *6 (E.D.N.Y. July 8, 2014), report and recommendation adopted, 2014 WL 4258988 (E.D.N.Y. Aug. 27, 2014) ("Recent decisions in the Eastern District of New York have determined that reasonable hourly rates in FLSA cases are approximately $300-$450 for partners, $200-$325 for senior associates, $100-$200 for junior associates, and $60-80 for legal support staff.") (collecting cases); *Tacuri v. Nithin Constr. Co.*, 2015 WL 790060, at *13 (E.D.N.Y. Feb. 24, 2015) (prevailing hourly rates for partners range from $300 to $400); *Griffin v. Astro Moving & Storage Co. Inc.*, 2015 WL 1476415, at *8 (E.D.N.Y. Mar. 31, 2015) (reasonable hourly rates are $200 to $325 for senior associates).

Finally, we point out that, consistent with the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015), this Agreement does not contain a confidentiality provision or general release, and the non-disparagement provision carves out an exception for truthful statements.

For all of the reasons set forth above, the parties request that the Court approve the settlement agreement attached hereto and enter the stipulation of dismissal filed herewith. We hope that this letter provides the Court with the information that it needs to assess the fairness of this settlement. We are available at the Court's convenience should the Court have any questions regarding the contents of this letter, or if the Court requires any additional information or documentation.

                                        Very truly yours,

                                        Michael Samuel, Esq.

Enc.

cc: